UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:11-cr-555-T-24 AEP

SAMUEL POSA
_____/

# ORDER

This cause comes before the Court on Defendant Samuel Posa's Motion to Suppress Evidence. (Doc. 48). The Government opposes the motion. (Doc. 74). The Court held a hearing on this motion on June 4, 2012. As explained below, the motion is denied in part and granted in part.

## I. Background

On October 28, 2011, at approximately 7:20 a.m., DEA agents and Tampa Police Department officers arrived at Samuel Posa's ( (hereinafter "Posa") residence on Lake Shore Drive in Tampa with an arrest warrant. Agents surrounded the residence and attempted to call Posa by phone to secure a peaceful surrender. Posa's brother answered the phone on two occasions, and agents indicated the need for both the brother and Posa to come out of the house with their hands up. Agents also announced this demand by bull horn from outside of the residence. Within approximately five minutes, Posa and his brother exited the residence with their hands raised in the air. Posa was placed under arrest. A SWAT team entered the residence to perform a security sweep, and at some point, Ms. Jimenez, Posa's wife, exited the residence.

### A. Statements after Posa was Handcuffed

DEA Special Agent Jonathan Ryckeley handcuffed Posa. Posa stated, "You're trying me," "It's too f–ing early for this," and "I haven't had time to wipe the cat s–t out of my eyes." Agent Ryckeley informed Posa that he was under arrest for conspiracy to distribute oxycodone. Posa asked "Conspiracy?" Agent Ryckeley replied, "Yes, with Dr. Barton." Posa then stated that Dr. Barton paid for the prescriptions, that Posa gave half of the oxycodone back to Dr.

Barton, that Posa was only doing what Dr. Barton told him to do, and that Posa's oxycodone dependancy was Dr. Barton's fault.

    **B.**    <u>**Consent to Search**</u>

Agent Ryckeley asked Posa for permission to search his residence. Posa asked Agent Ryckeley why he wanted to search. Agent Ryckeley replied, "Let's say, what if I wanted to search for a kilo of cocaine?" Posa agreed he could search the residence if Posa could be present for the search and if Posa could smoke a cigarette. Agent Ryckeley agreed. Agent Ryckeley and Agent Corbett both testified that Posa gave voluntary consent to search his home in exchange for the right to be present for the search and to smoke a cigarette. Both agents were present for the conversation. DEA Agent Michael Pullen and DEA Agent Frank Caira, although not present when consent was given, both testified that they heard the announcement by Agent Ryckeley to stop the search when consent was later withdrawn by Posa. Posa's neighbor, Richard Froebel, testified that he heard Posa state, after being handcuffed, "F– no you can't go in there, hell no." Mr. Froebel was approximately 50 yards away and had a car blocking his view.

    **C.**    <u>**Statements in Kitchen to Agent Gary Corbett**</u>

Agent Ryckeley seated Posa in the kitchen as the search began. Agent Ryckeley verbally provided <u>Miranda</u>[1] warnings to Posa at that time. Agent Corbett was present when Agent Ryckeley read the <u>Miranda</u> warnings to Posa. Agent Ryckeley then asked Posa if he wanted to talk, and Posa replied to Agent Ryckeley, "No I don't want to talk to you right now." Agent Ryckeley exited the kitchen, and Agent Corbett stayed with Posa in the kitchen. Posa asked Agent Corbett to feed his dog, and Agent Corbett obliged. Agent Corbett also provided two cigarettes to Posa and gave him a drink when Posa said he was thirsty. During his time in the kitchen with Agent Corbett, Posa looked down and stated that he did not understand why he was under arrest because he had not dealt with Dr. Barton in a year and a half. Agent Corbett then asked, "So that would mean the last time you dealt with him was late 2009, early 2010?"

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).

Posa looked at Agent Corbett and replied, "[t]hat's right." Posa then looked at the floor again and said he told Dr. Barton he could not do this anymore, things were getting crazy.

###    D.    Exchange with Brother James Posa

As Posa was in the kitchen with Agent Corbett, Posa's brother, James Posa, came into view of the kitchen. Posa said to his brother, "This whole thing is about Dr. Barton." James replied that he did not understand because Posa had not dealt with Dr. Barton in about a year and a half.

###    E.    Recovery of Gun and Withdrawal of Consent

During the search, while Posa was in the kitchen, agents found a loaded gun in a bag on a night stand next to a bed in a bedroom. A piece of mail was located on the bed near the night stand with Posa's name on it. A bottle of over-the-counter drugs consistent with usage by a male was also in the bedroom.

After the gun was found, Posa informed Agent Corbett that he was done, that he wanted to go to the jail, and that he did not want the agents to search anymore. Agent Corbett relayed this information to Agent Ryckeley, who confirmed with Posa that he was withdrawing his consent to search. Agent Ryckeley called off the search. Agents finished processing the gun that had already been located and exited the residence.

###    F.    Statements Made in the Vehicle

Agent Ryckeley told Posa that he was being transported to the United States Courthouse where he would be seen by a magistrate judge. Agent Ryckeley told Posa that he would be processed and turned over to the United States Marshals. Posa, who was seated in the front passenger seat and handcuffed, stated that his dependency was because of Dr. Barton, that Dr. Barton had taken the Hippocratic oath, and not Posa, that Posa got a lot of prescriptions for Dr. Barton, and that Posa received half of the prescriptions back from Dr. Barton.

### G. Statements Made in the Cell Block

As Posa was being processed in the Marshal's cell block at the courthouse after transport, Posa stated that he knew what he was doing was wrong, that Dr. Barton gave him money to fill the prescriptions, that Posa gave half of the prescriptions to Dr. Barton, that Posa snorted cocaine with Dr. Barton, and that Posa did not inject oxycodone.

## II. Motion to Suppress

Posa seeks to suppress all statements made by him as in violation of <u>Miranda</u>. (Doc. 48, pp. 4-6). Posa also seeks suppression of the gun as the product of an illegal search. (Doc. 48, p. 7).

### A. Statements after Posa was Handcuffed

Posa's initial statements that the agents were trying Posa, that it was too early for this, and that Posa hadn't had time to wipe the cat s–t out of his eyes, are not incriminating or substantive. The statements were also voluntary and not elicited pursuant to questioning. As such, these statements are not suppressed. <u>See</u> <u>Sullivan v. State of Alabama</u>, 666 F.2d 478, 482 (11th Cir. 1982) (holding that <u>Miranda</u> protections do not extend to voluntary statements made to law enforcement officers).

Posa's later statements, made after Agent Ryckeley told Posa his charge, were also voluntary and not pursuant to questioning by law enforcement. As such, there is no reason for these statements to be suppressed. <u>See</u> <u>id.</u>

### B. Consent to Search

This Court need not decide whether the first protective sweep of Posa's residence was valid because no evidence was discovered or seized as a result of that sweep. With regard to whether Posa subsequently gave consent to search his residence, both Agent Ryckeley and Agent Corbett testified that Posa agreed to the search if Posa could be present and smoke a cigarette. Although Mr. Froebel heard Posa say something to the contrary, this Court cannot determine the

context or timing of the statement based on Mr. Froebel's testimony. As such, the Court finds that the search was consensual until Posa withdrew his consent and the agents departed.

C.  **Statements in Kitchen to Agent Corbett**

Posa's statement that he did not understand why he was under arrest as he had not dealt with Dr. Barton in a year and a half was voluntary and not the product of interrogation. See Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991) ("Voluntary and spontaneous comments by an accused, even after Miranda rights are asserted, are admissible evidence if the comments were not made in response to government questioning."). Posa was looking at the floor and speaking to himself. As such, this statement is not suppressed.

Agent Corbett then asked Posa whether that meant the last time Posa dealt with Dr. Barton was in late 2009 or early 2010. Posa's response to Agent Corbett's question, "yes, that's right," followed by Posa's additional statements that he told Dr. Barton he could not do this anymore and things were getting crazy, were the product of custodial interrogation and are not admissible. Posa had invoked his Miranda warnings. Although he volunteered the first statement that he had not dealt with the Doctor in a year and a half, Agent Corbett's follow-up question to clarify the timing did constitute the beginning of interrogation such that Posa's response, "yes, that's right" and his follow-up statement that he told Dr. Barton he could not do this anymore, things were getting crazy are both suppressed as involuntary. See Miranda, 384 U.S. at 473-74 (holding that "[o]nce warnings have been given . . . [i]f the individual indicates at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease"); Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (interrogation includes express questioning or any words or actions on the part of the police "that the police should know are reasonably likely to elicit an incriminating response from the suspect").

### D. Exchange with Brother James Posa

The statement made by Posa to his brother was voluntary and not made pursuant to questioning by law enforcement. As such, it is not suppressed. See Cannady, 931 F.2d at 754 (finding voluntary and spontaneous statements admissible).

### E. Recovery of Gun

Given that this Court has found the search was consensual, the gun and ammunition will not be suppressed as the product of an illegal search. See United States v. Telcy, 362 Fed. App'x. 83, 86-87 (11th Cir. 2010) (finding voluntary consent to search residence as valid basis for search).

### F. Statements Made in the Vehicle

Posa's statements to Agent Ryckeley and Agent Caira in the vehicle on the way to the courthouse were voluntary and not in response to questioning or interrogation. As such, these statements are not suppressed. See Cannady, 931 F.2d at 754.

### G. Statements Made in Cell Block

Posa's statements in the cell block were voluntary and not in response to questions or interrogation. As such, these statements are not suppressed. See Cannady, 931 F.2d at 754.

## III. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant Posa's Motion to Suppress Evidence (Doc. 48) is **DENIED IN PART AND GRANTED IN PART**.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of June, 2012.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
*Pro Se* Defendant

6