UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. Case No. 8:11-cr-555-T-24AEP

SAMUEL POSA
______________________________/

**ORDER**

This cause comes before the Court on Defendant's Renewed Motion for Judgment of Acquittal, and in the Alternative, Motion for New Trial. (Doc. No. 188). The Government opposes the motion. (Doc. No. 192). As explained below, the motion is denied.

**I. Background**

On October 27, 2011, Defendant Samuel Posa was charged in a three-count Indictment. (Doc. No. 1). In Count One, Defendant is charged with conspiracy to: (1) dispense and distribute, or cause to be dispensed and distributed, Oxycodone outside the usual course of professional practice and not for a legitimate medical purpose, (2) possess with intent to distribute Oxycodone, and (3) distribute Oxycodone. In Count Two, Defendant is charged with distributing and possessing with the intent to distribute Oxycodone on or about September 22, 2010. In Count Three, Defendant is charged with distributing and possessing with the intent to distribute Oxycodone on or about October 23, 2010.

The case against Defendant proceeded to a four day jury trial, from September 17 - 20, 2012. The evidence at trial showed that Dr. Blake Barton[1] and his girlfriend, Lea Ann Locklear, were addicted to Oxycodone. During an 18 month period in 2009 and 2010, Barton, a medical doctor, wrote numerous Oxycodone prescriptions for Defendant that were outside the ususal

[1]Barton died on June 29, 2011.

course of professional practice and that were not for a legitimate medical purpose. Defendant would then fill the prescriptions at different pharmacies around the Tampa Bay area, and Defendant would keep half of the Oxycodone pills and give half of the pills to Barton and Locklear. Barton paid for the first two Oxycodone prescriptions to be filled, but thereafter, Defendant paid for the prescriptions to be filled.

On September 20, 2012, the jury reached a verdict of guilty as to all three counts. (Doc. No. 180). Thereafter, Defendant through his then-attorney Matthew Farmer filed the instant motion for judgment of acquittal and new trial. The motion was timely filed. On November 7, 2012, attorney Farmer was relieved of further representation, and new counsel, Victor D. Martinez, was appointed to represent Defendant.[2] Attorney Martinez filed a motion to stay deadlines for filing post-verdict motions, which the Court denied because the time for filing post-trial motions had long ago expired. However, the Court gave Defendant through his new counsel until December 31, 2012 to file an amended motion for judgment of acquittal and new trial. The Court has been advised that no such amended motion will be filed; therefore, the Court will proceed to address the motion.

## II. Motion for New Trial

In the instant motion, Defendant argues that he is entitled to a new trial because the verdict was against the weight of the evidence. As explained below, the motion is denied.

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." In analyzing Defendant's motion:

[2]Victor Martinez is the fourth attorney the Court has appointed to represent Defendant.

> [T]he court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

U.S. v. Hernandez, 433 F.3d 1328, 1335 (11th Cir. 2005)(internal quotation marks and citations omitted).

**A. Count One**

Defendant argues that he is entitled to a new trial on the conspiracy charge, because his relationship with Dr. Barton was a buyer-seller relationship that could not give rise to the charged conspiracy.[3] Specifically, Defendant contends that he was the buyer and user of up to half of the Oxycodone tablets that he obtained through prescriptions from Barton, with the remaining Oxycodone tablets being given to Barton. Defendant relies on U.S. v. Dekle, 165 F.3d 826 (11th Cir. 1999), to argue that because he merely had a buyer-seller relationship with Barton, he did not willfully agree to join a conspiracy that had as its objective the goal of distributing Oxycodone.

In opposition, the Government argues that Defendant's reliance on Dekle is misplaced, and the Court agrees. While the court in Deckle did conclude that the joint objective of a conspiracy "is missing where the conspiracy is based simply on an agreement between a buyer

---

[3]"In order to establish the existence of a conspiracy under 21 U.S.C. § 846, the government must prove that the defendant entered into an agreement with one or more persons, the object of which agreement was to commit an act made unlawful by the federal narcotics laws." U.S. v. Dekle, 165 F.3d 826, 829 (11th Cir. 1999).

and a seller for the sale of drugs" because "they do not have the joint criminal objective of distributing drugs," the facts in Deckle are distinguishable from the facts of the instant case. Id. at 829.

The Government argues that Defendant's relationship to Barton was not that of a buyer-seller. Furthermore, to the extent that Barton and Defendant did have a buyer-seller relationship, "an agreement to distribute drugs may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to a purchaser. See U.S. v. Jean-Louis, 399 Fed. Appx. 567, 569 (11th Cir. 2010); see also U.S. v. Mercer, 165 F.3d 1331, 1335 (11th Cir. 1999). Therefore, the Government argues that the evidence showed that Barton and Defendant (as well as Locklear) had a continuing relationship with the joint purpose of feeding their own Oxycodone addictions while selling Oxycodone to pay for their Oxycodone addictions. The Court agrees.

Locklear testified during the trial that she and Barton met Defendant at a friend's house where Defendant was using Oxycodone. (Doc. No. 204, p. 38). Thereafter, at a second meeting at the friend's house, Defendant and Barton starting discussing an arrangement where Barton would provide Defendant with prescriptions for Oxycodone. (Doc. No. 204, p. 39-41). The next night, Barton and Locklear met up with Defendant in a parking lot, and Barton provided Defendant with prescriptions for Oxycodone and cash to fill the first prescription. (Doc. No. 204, p. 41-43). The following day, Defendant went to Barton and Locklear's apartment with at least 100 Oxycodone pills, and Defendant gave Barton and Locklear 90 of those pills. (Doc. No. 204, p. 44-46). At the same time, Barton gave Defendant more prescriptions for Oxycodone. (Doc. No. 204, p. 46). Thereafter, Barton continued giving Defendant prescriptions for 240

thirty-milligram Oxycodone tablets, and Defendant would fill the prescriptions and keep half of the tablets for himself and give the other half to Barton and Locklear. (Doc. No. 204, p. 49-50, 81).

Barton provided Defendant with cash to pay for the first two Oxycodone prescriptions. (Doc. No. 204, p. 50). Locklear testified that thereafter, the arrangement was that Defendant would use the money he made from selling a portion of his half of the Oxycodone pills to pay to fill the prescriptions that Barton wrote for him. (Doc. No. 204, p. 50-52, 90).

Locklear testified about her role in the conspiracy. Locklear drove with Defendant a few times to pharmacies when Defendant filled the Oxycodone prescriptions Barton had written. (Doc. No. 204, p. 53). Locklear sometimes was the person who physically handed off the Oxycodone prescriptions to Defendant from Barton, and Defendant sometimes gave the Oxycodone pills to Locklear directly after the prescriptions were filled. (Doc. No. 204, p. 54-55). Additionally, a few times Locklear pretended to be Barton's receptionist when a pharmacy called to confirm that Defendant's Oxycodone prescription was valid. (Doc. No. 204, p. 69-71).

Locklear also testified that she saw Defendant give Oxycodone pills to his brother. (Doc. No. 204, p. 65). Additionally, Locklear testified that she overheard some of Defendant's phone calls in which it appeared that Defendant was setting up deals to sell the Oxycodone. (Doc. No. 204, p. 66).

DEA Agent Ryckeley also testified at the trial. Specifically, he testified that over the 18 month period in 2009 and 2010, Barton wrote Defendant at least 248 prescriptions for Oxycodone (which equates to 57,855 thirty-milligram pills). (Doc. No. 204, p. 238, 241). Further, Ryckeley verified that Defendant filled at least 164 of the 248 Oxycodone prescriptions

(which equates to 38,655 thirty-milligram pills). (Doc. No. 204, p. 193). Finally, Ryckeley testified that based on his law enforcement experience, Defendant's 50% portion of the 38,655 Oxycodone pills was a "distribution amount" rather than a "personal use" amount. (Doc. No. 205, p. 149.

Based on the above, the Court concludes that there was sufficient evidence for the jury to conclude that Barton, Locklear, and Defendant joined in a conspiracy that had the joint purpose of feeding their own Oxycodone addictions while selling Oxycodone to pay for their Oxycodone addictions. In order to accomplish their goals, the conspiracy required that Barton write prescriptions to Defendant. The evidence showed that Defendant was not a patient of Barton,[4] and as such, the prescriptions that Barton gave to Defendant were outside the usual course of professional practice and not for a legitimate medical purpose. Therefore, the evidence showed that Defendant conspired to dispense Oxycodone outside the usual course of professional practice and not for a legitimate medical purpose. See U.S. v. Albert, 675 F.2d 712, 715-16 (5th Cir. 1982)(recognizing that even if the defendants could not dispense the drug themselves because they were not doctors, the defendants could participate in a conspiracy with a doctor to dispense the drug).

Furthermore, the evidence showed that Defendant filled at least 164 Oxycodone prescriptions and received in excess of 36,000 thirty-milligram tablets. Defendant's half of the verified filled Oxycodone prescriptions equated to a "distribution amount" rather than a "personal use" amount as he suggested in his testimony. Finally, the evidence was sufficient for

[4]The Court notes that Defendant testified otherwise, but the Court found Defendant's testimony to be wholly non-credible.

the jury to conclude that Defendant conspired to, and did in fact, distribute the Oxycodone to others (including his own brother) in order to pay for the Oxycodone prescriptions that he filled.

Accordingly, the Court concludes that the jury's verdict was supported by the evidence. Therefore, the interests of justice do not require a new trial as to the conspiracy charge.

**B. Counts Two and Three**

Defendant makes a one sentence argument in a footnote that he is entitled to a new trial on Counts Two and Three based on insufficiency of the evidence. (Doc. No. 188, p. 3 n.1). This argument has no merit.

## III. Motion for Judgment of Acquittal

Defendant also moves for a judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29(c). Rule 29 provides that on a defendant's motion, the court must enter a judgment of acquittal for any offense for which the evidence is insufficient to sustain a conviction. As explained by one court:

> In considering a motion for the entry of judgment of acquittal under Federal Rule of Criminal Procedure 29(c), a district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction. The district court must view the evidence in the light most favorable to the government. The court must resolve any conflicts in the evidence in favor of the government and must accept all reasonable inferences that tend to support the government's case. The court must ascertain whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

U.S. v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999)(internal citations omitted).

Unlike Rule 33 motions in which the Court can weigh the evidence, the Court must construe the evidence in the light most favorable to the Government when ruling on Rule 29(c) motions. Therefore, for the same reasons that the Court found that Defendant was not entitled to a new trial, the Court concludes that Defendant is not entitled to a judgment of acquittal.

**IV. Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Renewed Motion for Judgment of Acquittal, and in the Alternative, Motion for New Trial (Doc. No. 188) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of December, 2012.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record